Argued and submitted September 13, 1995; resubmitted In Banc September 11, affirmed December 24, 1996

## Lance A. BLAISDELL,
*Respondent,*

*v.*

## MOTOR VEHICLES DIVISION,
*Appellant.*

(94C-12400; CA A86475)

929 P2d 1073

In Banc

Stephen L. Madkour, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore

R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance by respondent.

ARMSTRONG, J.

Leeson, J., concurring.

Warren, J., dissenting.

## ARMSTRONG, J.

The Motor Vehicles Division (MVD) appeals a circuit court judgment that vacated its order suspending petitioner's driver's license. We review to determine whether MVD erred as a matter of law in concluding that the arresting officer was prevented from attending a scheduled suspension hearing because of an "official duty conflict." *See* ORS 813.450. We conclude that MVD did err and affirm the circuit court's judgment vacating MVD's order.

Petitioner was arrested for driving under the influence of intoxicants. MVD scheduled a hearing on the suspension of petitioner's driver's license for May 16, 1994. The arresting officer, Barnes, failed to attend the hearing and MVD entered a default order that reinstated petitioner's license. That order provided that if MVD "determines within 10 days of this order [that] the default was caused by 'official duty conflicts[,]' * * * a rescheduled hearing will be conducted." Within the required time period, MVD received a letter stating that Barnes had not attended the hearing because his "vehicle [had] seized up and would not run." MVD concluded that Barnes had failed to attend the hearing due to an official duty conflict. It therefore rescheduled the suspension hearing.

At the rescheduled hearing, petitioner challenged MVD's determination that Barnes had failed to attend the earlier hearing because of an official duty conflict. The hearings officer rejected the challenge and the hearing proceeded. During the hearing, petitioner questioned Barnes about why he had missed the initial hearing, which had been scheduled for 3 p.m. Barnes explained that he had gotten off work at 6 a.m. on the day of the hearing and that, on the way to the hearing, his car had stopped running. He then spent approximately 45 minutes trying to figure out what was wrong with the car, but could not. He testified that he was driving his private vehicle at the time and not a police car.

After the hearing, MVD affirmed the order suspending petitioner's license. Petitioner appealed to the circuit court. The court determined that MVD had erred in concluding that Barnes had missed the initial hearing because of an

official duty conflict. MVD appeals. We review MVD's decision to determine whether it "erroneously interpreted a provision of law." ORS 813.450(4)(a). In this case, the provision of law is one of the agency's own rules.

■ ORS 813.440 requires that a hearing to suspend an individual's driver's license be held according to the time limits in ORS 813.410 unless one of the exceptions in ORS 813.440 applies. The exception at issue here is one that allows a hearing to be rescheduled when an officer is unable to attend a hearing within the applicable time limits "due to the officer's official duty conflicts." ORS 813.440(1)(d). That provision directs the Department of Transportation to "set forth by rule the conditions that constitute 'official duty conflicts.'" In that regard, the agency promulgated OAR 735-90-120(4), which provides:

> "Examples of official duty conflicts include, but are not limited to:
>
> "(a)   Court appearances;
>
> "(b)   Physical incapacity resulting from the performance of duties as a police officer;
>
> "(c)   Priority official training;
>
> "(d)   Inclement travel conditions;
>
> "(e)   Emergencies requiring the subpoenaed police witness's presence, including natural disasters, accidents, alarms, control of a crime scene and exceptional community caretaking responsibilities pursuant to ORS 133.033; or
>
> "(f)   Service in the Organized Militia pursuant to ORS 399.055 or 399.065."

Most of the listed examples explicitly relate to duties of a police officer that require the officer's presence elsewhere and that take priority over appearing at hearings. MVD points to the exception for inclement travel conditions, however, and argues that that exception indicates the agency's intention to include among official duty conflicts "anything objectively reasonable under the circumstances that prevents the officer from performing" the official duty of attending the hearing.

Specifically, MVD argues that the term "official duty conflict," as used in its rule, may reasonably be construed in two ways: (1) to mean an official duty that requires the officer's presence elsewhere and that prevents the officer from attending the hearing or (2) to mean that the hearing is the official duty, and the conflict is anything that reasonably prevents the officer from complying with that duty. MVD urges us to adopt the latter construction.

■ Although an agency's interpretation of its own rule is entitled to deference under appropriate circumstances, we do not defer to a construction that conflicts with a rule's terms. *See, e.g., Don't Waste Oregon Com. v. Energy Facility Siting,* 320 Or 132, 142, 881 P2d 119 (1994). We conclude that MVD's construction conflicts with the language that MVD has chosen to use in its rule.

Our interpretive task in this case is complicated by the fact that the rule does not do what ORS 813.440(1)(d) directed the department to do in adopting the rule, which is to specify "the conditions that constitute 'official duty conflicts.'" Instead, the rule simply provides a nonexclusive list of examples of those conflicts. Our task, therefore, is to determine from those examples the characteristics common to them, which characteristics are the conditions that constitute official duty conflicts. *Cf., e.g., Bellikka v. Green,* 306 Or 630, 635-36, 762 P2d 997 (1988) (list of examples is to be construed to embody common principle that constitutes or limits general policy).

MVD's proposed construction focuses on a single example among the group in the rule: the example involving "inclement travel conditions." It reasons that inclement travel conditions could be understood to be conditions that reasonably prevent an officer from performing the official duty of attending a suspension hearing, so the rule could be interpreted to embody the principle that an official duty conflict is anything that reasonably prevents an officer from attending a hearing.

The problem with MVD's construction is that it fails to give meaningful effect to the other examples in the list. The most telling illustration is the example that deals with "physical incapacity *resulting from the performance of duties*

*as a police officer.*" OAR 735-90-120(4)(b) (emphasis supplied). If the rule were intended to work the way MVD claims that it does, then physical incapacity would *not* be limited to incapacity resulting from the performance of official duties. Instead, it would cover *any* incapacitating ailment suffered by the officer. In other words, the example involving physical incapacity would be written to cover, for example, an officer who is hospitalized as a result of a heart attack, without regard to whether the heart attack resulted from performance of the officer's official duties. MVD's proposed construction of the rule makes the condition stated in the example superfluous.

"Priority official training" is another example that presents the same problem. Given the quasi-military nature of police service, any command from a superior to an officer to engage in official duties other than attending a suspension hearing would prevent the officer from attending the hearing, so the example imposes a greater constraint on the exception than MVD's proposed interpretation would permit. That is because it limits the exception to priority training, as opposed to training. *See, e.g., Higgins v. MVD,* 139 Or App 314, 911 P2d 950 (1996) (holding that officer's statement that he was 'assigned to training' on the day of the hearing did not establish the existence of an official duty conflict).

Conversely, if, but for the rule, a subpoena to attend a suspension hearing would otherwise take precedence over priority official training, then the example does not correlate at all with MVD's proposed construction of the rule. MVD's construction simply recognizes that events or things external to the rule could reasonably prevent an officer from attending a hearing. Its construction of the rule is not one in which the rule, itself, establishes priorities between competing obligations, yet that is precisely what the example involving priority official training does. The example indicates that one duty, priority official training, takes precedence over another duty, attending a suspension hearing. We know of nothing external to the rule that establishes that to be true, but MVD's construction of the rule depends on information external to the rule to establish whether an activity or event prevented the officer from attending the hearing.

MVD's proposed construction reduces the list of examples to one, the example involving inclement travel conditions. The other examples become superfluous, because they add nothing to MVD's understanding of the rule. In other words, the examples cannot be reconciled with MVD's understanding except by stripping them of any meaningful content. That is not a permissible way to construe the rule and, accordingly, we do not defer to MVD's construction of it. *See, e.g., Bellikka*, 306 Or at 635-36.

Barnes' failure to attend the hearing because of car problems was not due to an official duty conflict under OAR 735-90-120(4). It follows that the trial court did not err in reversing MVD's order.

Affirmed.

**LEESON, J.,** concurring.

I join the majority except for its advisory opinion regarding the meaning of "Priority official training."

Riggs and Landau, JJ., join in this concurring opinion.

**WARREN, J.,** dissenting.

The majority concludes that MVD's construction of its rule on official duty conflicts is not plausible. It concludes that MVD erred as a matter of law, in construing the term "official duty conflict" under OAR 735-90-120(4) to provide that the arresting officer was prevented from attending a scheduled suspension hearing due to an official duty conflict. It therefore affirms the circuit court judgment vacating MVD's order. Although I agree with the majority that this is a better way to read the rule, that simply is not our function. If the agency's construction of the rule is a plausible reading, we must sustain it. Because I believe that MVD's construction of its rule is plausible, I dissent.

We defer to an agency's interpretation of its own rule when that interpretation is plausible and is consistent with the wording of the rule itself, the rule's context, and is not inconsistent with any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

As the majority notes, our interpretive task is complicated by the fact that while the statute requires the MVD to "set forth by rule the conditions that constitute 'official duty conflicts,'" the rule provides a nonexclusive list of examples of what constitute "official duty conflicts." The statute seems to charge the agency to set out a comprehensive list.[1] Our task, therefore, is to determine from the examples and the characteristics common to them, whether the rule accommodates the particular circumstances of the present case. *Cf., e.g., Bellikka v. Green,* 306 Or 630, 635-36, 762 P2d 997 (1988) (applying principle that list of examples is construed to embody common principle that constitutes or limits general policy).

MVD's proposed construction focuses on a single example among the group in the rule: the example involving "inclement travel conditions." It reasons that "inclement travel conditions" could be understood to stand for the principle that conditions beyond an officer's control that reasonably prevent the officer from complying with the officer's official duty to attend a suspension hearing constitute an "official duty conflict."

The majority takes issue with MVD's interpretation on the mistaken premise that it "fails to give meaningful effect to the other examples in the list." 145 Or App 472. The interpretation should not be allowed to stand, the majority asserts, because it "conflicts" with the rule's terms. *Id.* That rationale overstates the effect of the agency's action in this case. In proposing that MVD's interpretation has a broad-sweeping impact, the majority fails to grasp the very limited nature of the agency's adjudication. Nothing MVD has done here changes the nature of the rule. The agency interpretation does not negate, or express a position opposite to, the other examples listed in the rule. The application of MVD's interpretation is limited to circumstances such as the present. Nor has the agency's interpretation done anything to rob the other examples of their independent vitality—MVD is not precluded from relying on and applying the remaining examples in an appropriate context. Our task, simply, is to gauge

---

[1] The validity of the rule itself is not challenged here. For that reason we do not reach that question.

whether or not the agency's interpretation of the rule is plausible. It is, and our inquiry should end there.

I conclude that MVD's construction of the rule is plausible, and thus, that the rule accommodates the present circumstances. We therefore should sustain MVD's interpretation and application of its rule. *Don't Waste Oregon Com.*, 320 Or at 142. Because the majority concludes otherwise, I dissent.

Edmonds, J., joins in this dissent.